This court is now in session. Please be seated. And will you call the next case, please? 3-12-0271, the estate of Milan Bokan, Karen L. Adler, Appelheap Janie Shimer v. Sandra Bokan, Appellant George Hopps Mr. Hopps May it please the court, Ms. Shimer. I won't take terribly long on this. This is not a complicated case by any means. The reason I took this appeal was that the facts in here were undisputed. There was no doubt about that. No contest of the facts at all, whatsoever. We had a payable on death account that a deceit had created sometime before his death. Whatever was in that account, he intended to go to my client, Sandra Bokan. That's how payable on death accounts occur. So whatever amounts were put in there from the time he opened it until the time he died, he intended for those to go to my client, Sandra Bokan. Prior to his death, he had an agent under a power of attorney named, who was a niece, not one of his children, and she cashed in a number of his certificates of deposit in anticipation of paying funeral bills, not funeral bills, but nursing home bills for him. And Mr. Bokan surprised her by dying the next week after she did that. She took the money from the CDs, liquidated them. Some of those were in payable on death to my client. Some of those were payable on death to a sister of my client, who is not part of this appeal. And she took the monies and she put them into this checking account, which was a payable on death account. Now, these facts are undisputed. Now, the agent under the power of attorney, who also became the executor of the estate, and is the appellee here, you know, claimed that it was a mistake that she put those monies in the account, that she would not have put those in the account had she known it was a payable on death account. Yet, she admitted and the judge found that she had made a mistake, but she demonstrated nothing to the court as to why she should be alleviated from that mistake. There was certainly no evidence that my client took advantage of that or even knew about it when it happened. But nevertheless, when the decedent died, the account became payable to my client. And so, they have attempted to stop this. And unfortunately, here we have a judge who acknowledged what the facts were, acknowledged what the law is, and decided not to apply the law. That's why I'm here. He decided instead to say, I'm going to have these payable on death accounts, which are normally not part of an estate, put into the estate to pay bills. And what he did was he hung his hat on the fact that this man apparently was very concerned about having his bills paid, and that's why his agent under the power of attorney cashed in the CDs. But what did that have to do with payment of his bills after his death? A payable on death account is payable at death. It's not part of the estate by law. It is not to be used by the executor for payment of bills. And the executor here seeks to do that. And so, what we have here is a judge who is substituting his judgment for what the law should be, what he feels is fair and equitable. And quite frankly, justices, I have a problem with that. When a judge wants to ignore the law and say, here's what I think should be fair and equitable, and that's exactly what he's done here. And so this is why I took this appeal. My client is entitled to those funds in that account. It was a payable on death account. Had the judge, I guess if the judge feels that he should be rewriting Mr. Bokin's estate plan, he probably would argue that he could rewrite Mr. Bokin's will as well. Because a payable on death account is part of an estate plan. And Mr. Bokin had set it up that way. His intent was that his daughter should receive those funds when he died. And that's why we're here, is to get those. Any questions? Nope. Thank you, Mr. Hoffman. Ms. Shimer? Chief Justice, may it please the Court. Mr. Hoffman, my name is Jamie Shimer and I represent the plaintiff happily in this case, the estate of Milan Bokin. The case before you today is about nothing more than the decedent's intent. And it is the appellant, Sandra Bokin, who would ask this Court to wholly disregard the entirety of that intent and allow her to reap the benefits of a mistake, an honest mistake, to the tune of some $63,210. I have only one point to make in my time before this Court, and that is that the trial court correctly denied the motion for directed verdict, and was correct in finding that the assets inside the POD were properly assets of the estate. Eleven years prior to the decedent's death, Karen Ivelo was granted a power of attorney over property by her uncle. For 11 years, she didn't have to do a thing with that power of attorney. Her uncle was headstrong, he was self-sufficient, and he took care of himself up until his 88th year. For those 11 years, although it was known that at some point she may need this power, she was never included in any of Milan Bokin's financial dealings. She had no involvement in the counts at issue before this Court. She had no participation in establishing those counts or maintaining those counts. And for a large part of those 11 years, she had no access to those counts, as Milan Bokin was taking care of himself fine. The record will reflect that. Eventually, she did find herself in a position where she had to look after her uncle. After he fell, he was found lying on the bedroom floor of his home. Sometime in or around March of 2011, Milan Bokin had suffered an injury in his home. He had to go into the hospital and was eventually placed in long-term care. Karen Ivelo knew her uncle very well, as the record will reflect. And she knew that her uncle had not only been self-sufficient, but he'd always been a man to pay his debts. And when it became clear to Milan Bokin that he was incurring substantial medical bills and would need long-term care following this injury, he urged his niece, the woman that he named as executor of his will, to make sure that there was enough money to pay his debts that were mounting. In doing so, she liquidated his assets. She went to the First Midwest Bank, where he had his primary checking account. She liquidated a number of accounts and put all of those funds into his checking account so that there would be cash accessible to pay the bills of the nursing home, the long-term care facility, as they came due. He unexpectedly died seven days later. Ms. Ivelo dealt with Milan Bokin's financial decisions and affairs for a period of time spanning no more than three months. And in those three months, the uncle that she knew to be self-sufficient suffered a fall, went into the hospital, and went to a nursing home. Immediately after his death, a nursing home bill became due. She went to write a check, and only then did she learn that the account had a POD designation to Sandra Bokin. This court, in determining whether the trial court was correct, has to adhere to the standard of review. And in reviewing the trial court's finding that property did or did not belong to the estate, that should not be disturbed upon appeal unless it is against the manifest weight of the evidence, that is, that it was unreasonable or against the evidence presented to the trial court. The trial court correctly held that those assets were property of the estate. The appellant asked this court to allow Ms. Bokin to retain some $63,000 totaling all of Milan Bokin's cash assets, no matter how it came to be in that account. And the appellant relies on one piece of case law for support for this contention, the matter of Denler's Estate v. Indrecchi, which is a case that this court decided in 1980. In matter of Denler's Estate v. Indrecchi, this court ruled that a POD certificate, a $10,000 POD certificate, was not an asset of the estate, that it was properly payable to the daughter of the decedent, Eileen Indrecchi. Now, in that particular case, Eileen Indrecchi, the daughter, there was evidence that she had assisted her mother in some of her financial affairs. She had gone with her mother to a financial institution. They had opened a number of accounts, four of which were issued in those cases. Three were held in joint tenancy between Eileen Indrecchi and her mother, and one was a $10,000 certificate of deposit with a payable designation to Eileen Indrecchi. And the court found that the three accounts, this court found that the three accounts that were held in joint tenancy were assets of the estate. However, the $10,000 certificate of deposit with a POD designation should be properly payable to Eileen Indrecchi. Now, this court in 1980 did not say that POD accounts are never assets of the estate, only that this POD account, this $10,000 certificate of deposit, should have been payable to Eileen Indrecchi, and it left it at that. And it found so on the basis that when that certificate of deposit was opened with Eileen Indrecchi present, that the mother was seemingly healthy and capable, and there was no evidence of undue influence. Therefore, it found that the $10,000 should be paid to Eileen Indrecchi. Now, the appellant argues that this court should read that reasoning, that one line in a vacuum. No matter what the circumstances, no matter what the decedent's intent is, no matter how the money came to be in the account, that we should read that one line in a vacuum and hold as a bright line rule that POD accounts are never assets of the estate. Unfortunately, this ignores the realities that many loved ones are faced with in trying to care for their elderly decedents that administer their last wishes. In the matter of Demolition Estate v. Indrecchi, this court relied on another case decided by the 3rd District in 1974, in a state of right. In a state of right dealt with a decedent who opened an account and named his romantic interest as the beneficiary. He opened that account in the last year of his life. The account existed for only one year, and the evidence showed that that particular decedent had made routine, significant deposits into that account. He made one withdrawal in the amount of $500, which he subsequently repaid to the account, and in essence, the court found that it was his intent that the money deposited into that account was clearly meant for his romantic interest, and that was to the detriment of his two sons, who were takers under the will. So, even though in the matter of the estate of right, and the matter of Demolition Estate, even though those cases were decided just as the appellant, Sandra Boken, would have you decide here today, that the POD account should be payable to her, it's important to look at this court's reasoning in the estate of right in 1974, and that can be found at page 899-900 of that opinion. This court reasoned, and I quote, the court categorized payable on death accounts as pure testamentary dispositions. We do not think that it is perforce true in all cases where the words payable of death or their equivalent appear. We believe, rather, that each case must be decided upon its own facts. Demolition Estate and Rights Estate, both of those cases are still good law, and when you read those in conjunction, it becomes clear that it is not the state of the law in Illinois that POD accounts are never assets of the estate, but only that in those cases, those POD accounts were not assets of the estate. And it's very clear when you read a state of right that this court intended POD accounts to be decided on a case-by-case basis, that is, taking into account all of the circumstances surrounding it. And that's what we're asking this court to do here today. In this particular instance, the decedent used this particular POD account as his primary checking account. He paid all of his bills out of this account, and he was self-sufficient up until the three months prior to his death. He handled all of his own affairs. He did not involve Karen Ivlo in any of those affairs, and it wasn't until he suffered the fall at home that Karen Ivlo wrote her first check using her power of attorney out of that account. The decedent also had an estate plan, which the record indicates. An estate plan that included a number of relatives, an estate plan that included the POD account, an estate plan that also included a certificate of deposit with a POD designation and the estate plan also indicated that the remainder of his estate was to be distributed amongst several six or seven nieces or nephews, including the insecular Karen Ivlo. The decedent not only expressed his intent in the will, but he expressed his intent to his agent under a power of attorney when he made it known to her that he was worried about his mounting financial bills, and he urged her to make sure that there was money available to pay these bills. In doing just that and liquidating the accounts, she made a mistake, and she made an honest mistake, one of which Karen Ivlo derives absolutely no benefit from. Since this court has already previously held in 1974 and 1980 that POD accounts are to be determined on a case-by-case basis, the case of Nichols v. Nichols becomes instructive. Nichols v. Nichols, the Fourth District case in 2011, stands for the proposition that the court has the power to revoke POD designations or change POD designations even when there is arguable evidence that the decedent intended for the POD beneficiary to receive those funds. Now, I'll give it to you that Nichols v. Nichols, the facts in that case are markedly different from this case, and the court therein was concerned with a nephew co-executor who had his uncle, and he had the authority to change the POD designations on several accounts, and the court was dealing with some obvious self-dealing in that particular case. However, what's important about that case and what's instructive to this case is that the Fourth District took issue with the fact that the nephew co-executor had essentially changed the estate plan to the detriment of other legacies, and this logic is applicable herein, because had Milan Bokin wanted Sandra Bokin to take all of his cash assets, he would not have specifically taken the $9,000 and set it aside in a certificate of deposit with a POD designation to Malene Bokin, her sister. He had an estate plan in place, and the appellee is not disputing that the POD was the decedent's intent and that the decedent did intend some of his assets and the court has to look at this issue in light of all of the surrounding facts, in light of everything that happened, and not just an isolated paragraph from an isolated case. The court can reach the same conclusions the trial court reached in this matter in the following ways. In Reed, Georgia's estate and in Reed, a state of law, in both cases cited by the appellee in our response brief, provides that it was the duty of Karen Ivelo to carry out the decedent's wishes. Section 5, slash 16, dash 1, and in re-estate of Elias, also both cited in our brief, give the trial court the authority and the discretion to recover assets that properly belong to the state. And finally, in matter of Demler's estate and a state of Charles Wright, when read together, state that when dealing with POD designations, the court has to examine this on a case-by-case basis. There's no dispute that Milan Bocan wished for his assets to be divided amongst various nieces and nephews, including the appellant, including her sister, Malene Bocan, and including Karen Ivelo. There's no dispute that it was the intent of the decedent to have his medical bills paid. And there's no dispute that this was a completely honest and innocent mistake by Karen Ivelo. This court, much like the trial court, is now faced with striking the balance between the law concerning PODs and the state of Charles Wright. In doing so, this court must... Did he have an account that he paid bills out of that was not POD? No. So where's the mistake? There wasn't another account to put the money in. She put it in the account he was paying his bills out of. Precisely. And that account was designated to go to Sandra upon his death. Precisely. The nursing home. Correct. To the detriment of other beneficiaries. Well, not exactly, because the trial court was trying to strike a balance between his intent in having a POD account payable to Sandra and his intent to have others under the will take a portion of his estate. And the trial court said, we will remove the assets, put it back in the estate, have all of the debts paid, and the POD checking account prior to Karen Ivo's mistake should be distributed to Sandra, and the $9,000, the certificate of deposit that was accidentally liquidated, should be distributed to Malene. So the trial court was trying to strike this balance and honor both of his POD designations as well as his intent under the will. And that's what this court needs to do as well. In siding with the impellent, if this court should side with the impellent, make no mistake that this court is now, for the first time, making a bright line rule that POD accounts are never assets of the estate. And that is a dangerous precedent in light of all of the unfortunate circumstances that happen when a loved one is trying to care for a decedent and wind up their affairs. In this particular case, an unfortunate mistake was made. And although impellent would like to point to some supposed negligence on the part of Karen Ivlo, the record indicates that Karen Ivlo was not involved in Malone's affairs simply because Malone was completely self-sufficient. In this particular case, should you accept that no matter how the money got into the account, all of it should now be distributed to Sandra Boken, this court is setting a dangerous precedent and, in fact, discouraging those who would wish to serve in the capacity of Karen Ivlo. You're discouraging those who would wish to take care of their elderly decedent's property in their final days. Make no mistake that what the appellant hearing is asking this court to do is to permit Ms. Boken to reap the benefits of Ms. Ivlo's mistake at the risk of contradicting the decedent's entire intent and to the detriment of all the other legatees, including her sister Malone. This case is not about a simple application of law to the facts, and it's not about the supposed negligence of Karen Ivlo. This case is about trying to strike a balance between the law concerning PODs and respecting all of the decedent's intent and not just portions of it. And for those reasons, we ask that this court affirm the holding of the trial court. Thank you. Mr. Hutton, Senator Barlow. I mentioned in the record you'll notice that there's other property in the estate. It's not like the estate doesn't have any assets to pay the bills. I mean, this POD account that the judge has attempted to bring back in the estate is just part of the estate. Well, let me ask, what about the POD account that was liquidated,     Well, an agent under a power of attorney has the authority to bring back the property in the estate, but it's not like the estate doesn't have any assets to pay the bills. Well, the judge has the authority to do that because she was doing it for the benefit of Milan Bolkin. To pay his bills, but not to pay up to your client. Well, but Milan Bolkin could have put that money in his POD account, and that's what I keep going back to here is that Milan Bolkin created that payable-on-death account when he did it many years before his death. Whatever money was in that account when he died, he intended to go to sleep. Okay? And so, what the judge here was trying to do when she says he wanted to strike a balance, is he wanted to substitute his judgment for what he thought was fair on how Mr. Bolkin might have decided had he known certain things. I mean, I do a lot of estate planning and a lot of handling of estates, and I preach to people about not using payable-on-death accounts. They can have disastrous results, but Illinois law is very firm on that. And it's not like with joint tenancy where you can go in and prove it's a convenience account because nobody else had the right to withdraw other than the power of attorney on this POD account, so we're not talking about a convenience account here. We're talking about something where it's an estate planning tool that he used to say, I want Sandra Bolkin to have whatever money is in this account. And that money is going to be fluid over the years, isn't it? It's to say whether it's going to be $60,000 she gets or $9,000 she gets. So for the judge to try and come in and parcel this out, it's beyond his authority, and he's substituting his judgment for what Mr. Bolkin provided for, and I think that's terribly wrong. That's all I have to say. Okay? Any questions? Nope. No questions. Thank you, Mr. Hoffman. Ms. Scheimer, thank you also. This matter will be taken under advisement. A written disposition will be issued, and right now the court will be in a brief recess for a panel change before the next case. Court is now